GORDON CHAMBERS AND THE PORT READING RAILROAD COMPANY v. THE CARTERET AND SEWAREN RAILROAD COMPANY.

1. On *certiorari* to review an order appointing commissioners for the condemnation of land, under the General Railroad law, if it appear that a *bona fide* reasonable effort to purchase has not been unsuccessfully made by the petitioning company, although the owner was accessible and competent to sell, the order will be set aside.

2. On such a *certiorari*, if it appear that the petitioning company knew the name of the owner of the land, and, in its application for appointment of commissioners, did not give the name of such owner, but named as owner another person known by it not to have any interest in the land, the order appointing commissioners will be set aside, at the instance of the real owner and the person named as owner.

On *certiorari*.

Argued at June Term, 1891, before Justices DEPUE, DIXON and REED.

For the prosecutors, *John R. Emery* and *Augustus G. Richey.*

For the defendant, *Benjamin Williamson.*

The opinion of the court was delivered by

DIXON, J. On December 22d, 1890, the Carteret and Sewaren Railroad Company applied to the Chief Justice for the appointment of commissioners for the condemnation of land of Gordon Chambers, in the township of Woodbridge, Middlesex county, for the construction of a railroad, and the Chief Justice assigned January 10th, 1891, as the time for making such appointment, of which time he ordered notice to be given to Chambers, who lived in Philadelphia, by publication in a New Brunswick newspaper, which publication was accordingly made. Nothing further was done upon that notice.

On January 19th, 1891, the Chief Justice made an order designating January 31st, 1891, as the time for appointing commissioners for the purpose aforesaid, and directed similar notice to be given to Chambers. On January 31st, 1891, he signed an order appointing commissioners, which recited that it was made upon an application presented to him by the Carteret and Sewaren Railroad Company, on January 19th, 1891.

To set aside this order, Gordon Chambers and the Port Reading Railroad Company have sued out the writ of *certiorari* now pending before us.

From testimony taken in the cause, it appears that, in September, 1890, the land in controversy was purchased for a railroad to be built from a point near Bound Brook to Arthur's Kill, and that, as a corporation to construct the road was not yet organized, the title was conveyed to Gordon Chambers, a civil engineer employed in the real estate department of the Philadelphia and Reading Railroad Company, who at once executed declarations of the trusts on which he held the land; that, on November 5th, 1890, the Port Reading Railroad Company was incorporated to construct the railroad mentioned, and immediately commenced to exercise acts of ownership upon said land; and that, by eight deeds executed December 9th, 1890, and recorded December 29th, 1890, and one deed executed December 15th, 1890, and recorded December 31st, 1890, Gordon Chambers conveyed the land to the Port Reading Railroad Company. It likewise appears that, on December 7th, 1890, Harry W. Douty, who was the agent of the Carteret and Sewaren Railroad Company to procure its right of way, and who afterwards swore to the application which was presented to the Chief Justice, called on Gordon Chambers, in Philadelphia, and told him he wanted a right of way through his land for the Carteret and Sewaren Railroad Company; that Chambers referred him to James H. Loomis, who was the real estate agent of the Port Reading Railroad Company, and that, on conferring with Loomis, Douty was informed that the land did not belong

to Chambers, but belonged to the Port Reading Railroad Company. At this conference, the question whether a right of way for the Carteret and Sewaren Railroad Company could be purchased was left unsettled, Loomis wishing to refer the matter to counsel and Douty agreeing to send Loomis a plan and description of the right of way required. Accordingly, on December 16th, 1890, Douty sent to Loomis the following:

CENTRAL RAILROAD CO. OF NEW JERSEY.
  OFFICE OF THE REAL ESTATE AGENT,
       119 Liberty Street.
*H. W. Douty, Real Estate Agent.*

       NEW YORK, Dec. 16, 1890.
J. H. Loomis, Esq., R. E. A., Philadelphia and Reading R. R. Co., 227 So. 4th street, Philadelphia, Pa.

DEAR SIR—As promised at our recent interview, I enclose description of land required for right of way of the Carteret and Sewaren Railroad Company, through lands of Gordon Chambers, or Port Reading Railroad Company, near Tufts Point, N. J.

    Yours truly,
       J. W. DOUTY,
        *Real Estate Agent.*

Description of land required for right of way of Carteret and Sewaren railroad, through property of Gordon Chambers, or Port Reading Railroad Company, in Woodbridge township, Middlesex county, N. J.:

Beginning at station 66+20, in the centre line of the amended location of the Carteret and Sewaren railroad, as filed in the office of the secretary of state. Said station being in the division line between lands of Gordon Chambers, or the Reading Terminal Company, and Thomas J. Sawyer, Jr.; thence along said centre line as filed north, eighty-seven degrees and eighteen minutes west, four thousand eight hundred and twenty feet, to a point in the division line between lands of the said Gordon Chambers, or the Reading Terminal

Company, and Miles Vernam, at station 114+40, in said centre line as filed, and embracing a width of fifty feet, being twenty-five feet on each side of and adjoining said centre line throughout; containing 5.532 acres.

The application of legal principles to the facts above stated leads to the conclusion that the order now under review should be set aside.

In the first place, it does not appear that the Carteret and Sewaren Railroad Company, or its agent, could not agree with the owner of the land for the purchase of the right required, as the statute under which the proceedings were instituted directs. *Rev., p.* 928, § 12. On the contrary, it appears that no *bona fide* reasonable effort at such agreement was unsuccessfully made. It is clear that, on December 16th, 1890, when Douty wrote to Loomis, both parties regarded negotiations for a purchase as still pending, and nothing afterwards occurred to indicate their termination. A failure to agree after a *bona fide* reasonable effort, is made by the statute a condition precedent to the application for appointment of commissioners to condemn in all cases where the owner of the land is accessible and competent to sell. *Vail* v. *Morris and Essex Railroad Co.,* 1 *Zab.* 189 ; *State, Wilkinson,* v. *Trenton,* 7 *Vroom* 499, 504 ; *State, Boice,* v. *Plainfield,* 12 *Id.* 138, 140.

Secondly, the statute above mentioned directs that there shall be presented to the justice who is asked to appoint the commissioners a description, in writing, of the lands required and the name or names of the occupant or occupants, if any there be, and of the owner or owners, if known, and their residence, if the same can be ascertained. The application presented to the Chief Justice, which was sworn to by Douty on December 20th, 1890, stated that Gordon Chambers owned the land. At that time Chambers was not the owner of the land, nor did he hold or claim any title to the same, legal or equitable, but the complete estate was vested in the Port Reading Railroad Company, and Douty was informed that this

company was the owner thereof. Notice to him was notice to the Carteret and Sewaren Railroad Company. The application, therefore, in this respect was not in accordance with the statute. It is not as though Chambers had some interest capable of being taken by condemnation. In such a case he might be considered as owner *pro tanto*, although he was not owner of the land, and the proceeding might stand for what it was worth. But Chambers has no right and asserts no claim whatever in the land, and these proceedings must either be utterly futile or result in the condemnation of some estate belonging to another person, known by the petitioner to be the owner, but not named in the petition. Such a procedure is consonant neither with the statute nor with general legal principles.

But the defendant insists that, as Chambers appeared by the records to be the owner on December 22d, 1890, when the application for appointment of commissioners was first made, he, and not the Port Reading Railroad Company, was the proper party to be designated as owner. For this contention, support can be sought only in the Registry acts; but it is not to be found there. By the act of March 23d, 1883 (*Rev. Sup.*, *p.* 135), unrecorded deeds are valid and operative against all persons, except subsequent judgment creditors without notice, and subsequent *bona fide* purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed or mortgage shall have been first duly recorded or registered. The Carteret and Sewaren Railroad Company stood in none of these classes on the date mentioned. Moreover, the proceedings to condemn should be regarded as instituted on January 19th, 1891, the day when, according to the recital in the order appointing the commissioners, the application, on which that order rested, was presented to the Chief Justice, for the application of December 22d, 1890, was evidently not pursued. But on January 19th, 1891, the title of the Port Reading Railroad Company was fully displayed upon the records, and there was no shadow of a reason for treating Chambers as the owner.

The defendant also takes the position that neither of the prosecutors has any standing to complain of the proceedings, since the one has no estate to be condemned, and the estate of the other cannot be impaired. But we think that Chambers acquires a *status* by the fact that he personally has been made a party to this unlawful procedure, and may therefore be involved in all the litigation possibly consequent thereon; and that the Port Reading Railroad Company has a *status*, upon the ground that the sole aim of the proceeding is to obtain an interest in its lands, without affording it such means of defence as the statute designs it to have.

The order in question should be set aside, with costs.